1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    DARRELL MARQUIS MAXEY,                      No.  1:15-cv-01803-DAD-JLT (HC)

12                      Petitioner,                **FINDINGS AND RECOMMENDATION
                                                   TO DENY PETITION FOR WRIT OF
13           v.                                    HABEAS CORPUS**

14    STUART SHERMAN, Warden,                      **[TWENTY-ONE DAY OBJECTION
                                                   DEADLINE]**
15                      Respondent.

16

17           Petitioner is currently in the custody of the California Department of Corrections and

18    Rehabilitation serving a determinate sentence of 19 years and eight months for his 2013 for

19    infliction of corporal injury on a spouse or cohabitant with a prior conviction, and assault with

20    means of force likely to cause great bodily injury.  The court further found true enhancements for

21    prior strike, prior prison term, and infliction of great bodily injury.

22           In this action, Petitioner raises multiple claims including sentencing errors, ineffective

23    assistance of counsel and judicial bias.  The Court disagrees and for the reasons set forth below,

24    recommends the petition be **DENIED.**

25    **I.      PROCEDURAL HISTORY**

26           As stated above, Petitioner was convicted in the Fresno County Superior Court on August

27    5, 2013, of inflicting corporal injury on a spouse or cohabitant with a prior conviction (Cal. Penal

28    Code § 273.5(e)(1)), and assault producing great bodily injury (Cal. Penal Code § 245(a)(4)).

                                                    1

(Pet., Ex. B.)  The jury also found true enhancements for great bodily injury as to each count (Cal. Penal Code § 12022.7(e)).  (Pet., Ex. B.)  The jury further found that Petitioner had suffered a prior strike and served a prior prison sentence (Cal. Penal Code § 667.5(b)).  (Pet., Ex. B.)  On September 3, 2013, the court sentenced him to serve a determinate term of 19 years and eight months.  (Pet., Ex. B.)

Petitioner appealed to the California Court of Appeal, Fifth Appellate District ("Fifth DCA").  On November 14, 2014, the Fifth DCA affirmed the conviction.  People v. Maxey, No. F068057, 2014 WL 6477558, at *1 (Cal. Ct. App. Nov. 19, 2014).  Petitioner filed a petition for review in the California Supreme Court, and the court denied review on January 28, 2015.  Id.

On December 2, 2015, Petitioner filed the instant petition for writ of habeas corpus in this Court.  (Doc. No. 1).  Respondent filed an answer on January 28, 2016.  (Doc. No. 11).  Petitioner did not file a Traverse.

**II.    FACTUAL BACKGROUND**

The Court adopts the Statement of Facts in the Fifth DCA's unpublished decision[1]:

> Gennifer Phillips married defendant after a brief courtship. On the evening of August 24, 2012, the couple went to defendant's brother's apartment. "Tee" and "Dee"—as defendant's brother and his girlfriend were commonly referred to— were planning to celebrate their daughter's birthday the following day. Phillips was helping Dee fill candy bags in anticipation of the party.
>
> Later, Phillips and defendant began to argue in a bedroom. Defendant was angry because Phillips mentioned her son would be seeing his biological father, with whom defendant did not get along. Phillips then told defendant she wanted to leave because she did not want to "disrespect the house," but defendant went "crazy." Defendant grabbed Phillips's arms then pushed her onto her back. He shoved her so hard her head snapped up; she felt pain in her neck. Phillips tried to get her purse, but defendant told her she was not going anywhere. He grabbed her again and shook her "like a rag doll."
>
> Defendant began hitting Phillips. In response, Phillips told defendant she wanted a divorce. Defendant shook her shoulders, causing her feet to leave the floor. He threw her on the bed and fell on top of her; she was facedown and defendant was on her back. Phillips was able to push him off and get back to her feet, but during the encounter her leg was broken. She had heard a "pop" in her left ankle and her foot was "dangling." The pain was great. Phillips told defendant he had broken her leg, but he replied, "Your leg's not broke, bitch."
>
> Eventually, Phillips was able to leave the room because Tee and Dee came in and

---

[1] The Fifth DCA's summary of facts in its unpublished opinion is presumed correct.  28 U.S.C. §§ 2254(d)(2), (e)(1). Therefore, the Court will rely on the Fifth DCA's summary of the facts.  Moses v. Payne, 555 F.3d 742, 746 (9th Cir. 2009).

held back defendant, although he was trying to grab her by the hair. Defendant broke free of his brother's grasp and grabbed Phillips from behind by her hair and purse near the apartment's front door. He whipped her around to face him and they struggled over her purse because it had the car keys in it. Phillips then let go of her purse and defendant fell back towards the wall. She told him, "Forget it, you can have it. I don't care. I'll walk home." Phillips left the apartment, hopping on her injured ankle but trying to run. She did not make it far. Just outside the door, defendant caught her and pulled her down to the ground by her hair. Defendant lifted her up by her bra and shoulder; it hurt. Then he punched her in the left eye with a closed fist. He struck her three to four times in the face. She could taste blood and the pain was great.

Phillips managed to make it to her car. Defendant was behind her yelling and cussing: "Fucking bitch, I'll fucking kill you. You're fucking stupid.... Fucking ock." She got to the passenger side door; the driver's side door was broken and would not open. She had neither the keys to her car, nor her purse, but she intended to break a window to get inside. Before Phillips was able to do so, however, defendant pushed her onto the car, then whipped her around to face him. He was yelling and cursing that she was not going anywhere. Then he took the keys from her purse and threw them into the parking lot, saying, "Go fetch, fucking bitch." When Phillips retrieved the keys, defendant wanted her to open the driver's side door so that he could sit in the car with her. She refused. She had been trying to get in the passenger side and had the door open. Defendant ran around to that side of the car. From behind, defendant pushed Phillips toward the driver's seat. Her head struck the driver's side door. Phillips righted herself in the driver's seat; defendant was sitting in the passenger seat. Defendant started punching Phillips in the stomach with his closed fists. She fought back, hitting him in the eye and mouth. Defendant grabbed her chin and bit her. Then he got on top of her, with his knees on her hips. Her hands were trapped under him and she was unable to move. Defendant put his hands around her neck, thumbs crossing over her windpipe, and squeezed. She could not speak or breathe. Her vision began to darken and tunnel, and she saw blue and white lights at the edge of her field of vision. The pain was a 10 on a scale of 1 to 10. She did not lose consciousness but thought she was going to die. Defendant let go and returned to the passenger seat.

Defendant resumed yelling at Phillips. He turned in the seat and began choking her again. It felt like her neck was being crushed. She thought she was going to die. Phillips does not remember what happened next because she blacked out from the second choking incident. She recalled waking up as defendant pulled her from the passenger side of the car by her hair. When Phillips got to her feet, defendant punched her in the left eye with a closed fist, telling her she was not going to leave him and threatening to kill her. Phillips was able to return to Tee and Dee's apartment. Initially, defendant was locked outside, but he banged on the door and jumped into the backyard yelling to be let in. Ultimately, defendant's brother let him in through the front door. Defendant tried to apologize to Phillips, who was sitting on the couch. His brother wanted them both to leave the apartment. Defendant told Phillips he would leave her alone if she took him to her home so he could get his stuff.  She agreed, hoping her brother would be at her home so her brother could hold defendant down while she called police. She was afraid for her life.

Defendant opened the car door for Phillips with her keys. As her car exited the apartment complex, Phillips was stopped by arriving police. She was asked if she was aware of any disturbance, and Phillips told the officer that a "couple Mexicans" were fighting in the complex. She did so because she was afraid

3

defendant would hurt her; he had a six- to seven-inch screwdriver in his lap. She did not think she could ask the officer for help at that time. After the officer drove away, defendant thanked Phillips. She continued toward her home, running red light signals enroute. On the way, defendant warned Phillips not to call the police, telling her he would kill her. She believed him.

Phillips went inside the home she shared with other family members and grabbed defendant's belongings from her room. Defendant followed her inside. Her brother was not home. Phillips drove defendant back to his brother's apartment because he promised her he would leave her alone so she could go to the hospital. She agreed.

At the apartment complex, Phillips pulled in and parked facing the exit. Defendant got out of the car, and when Phillips felt the weight of his two duffle bags being lifted from the car's trunk, she began to drive away. Before she could get away however, defendant broke the driver's side window with his hands. She took off.

Phillips drove to her mother's house; her mother called an ambulance. Before being transported to the hospital, Phillips gave a brief statement to a responding officer. She later spoke with a detective.

Although surgery was not required on her foot, Phillips wore a hard splint for six weeks and a walking boot for about 10 weeks. She used crutches for the first 12 weeks. Valium was administered in the hospital, and she was prescribed Vicodin for four months thereafter. Phillips still felt pain at the time of trial and would wear a small brace when needed. Walking caused pain, and she could no longer run and play with her children. Phillips suffered other injuries as well, including a black eye, and numerous bruises and scratches to her face, neck, shoulders, arms, and knee.

In a first amended information filed July 30, 2013, defendant was charged as follows: count 1—corporal injury to a spouse with a prior similar conviction (§ 273.5, subd. (e)(1)); count 2—criminal threats (§ 422); and count 3—assault by means likely to produce great bodily injury (§ 245, subd. (a)(4)). As to counts 1 and 3, it was further alleged defendant personally inflicted great bodily injury under circumstances involving domestic violence (§ 12022.7, subd. (e)); as to count 1 it was also alleged defendant had suffered a prior similar conviction in 2008; and as to count 3, it was further alleged defendant had prior serious felony convictions in 2002 and 2008 within the meaning of sections 667, subdivisions (b) through (i), and 1170.12, subdivisions (a) through (d). Defendant pled not guilty and denied all allegations.

At trial, Fresno Police Officers Sergio Gonzalez and Edward Louchren, and Detective Bryan Craft testified concerning their respective interviews of Phillips shortly after the incident and weeks later.

Following the five–day jury trial, defendant was found guilty of corporal injury to a spouse with a previous similar conviction (count 1) and assault by means likely to produce great bodily injury (count 3); the great bodily injury enhancements as to each count were found true by the jury. Defendant was found not guilty of criminal threats.

In a separate court trial, defendant's prior convictions for corporal injury to a spouse and robbery were found true, as was the prior prison term allegation.

On September 3, 2013, defendant was sentenced to a total of 19 years 8 months in

4

1    state prison.

2    Maxey, 2014 WL 6477558, at *1–3.

3    **III.    DISCUSSION**

4        A.    Jurisdiction

5        Relief by way of a petition for writ of habeas corpus extends to a person in custody

6    pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or

7    treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3);  Williams v. Taylor,

8    529 U.S. 362, 375 n. 7 (2000).  Petitioner asserts that he suffered violations of his rights as

9    guaranteed by the United States Constitution.  The challenged conviction arises out of the Fresno

10   County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. §

11   2254(a); 28 U.S.C.§ 2241(d).

12       On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of

13   1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

14   enactment.  Lindh v. Murphy, 521 U.S. 320 (1997) (holding the AEDPA only applicable to cases

15   filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA

16   and is therefore governed by its provisions.

17       B.    Legal Standard of Review

18       A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless

19   the petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision

20   that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

21   determined by the Supreme Court of the United States; or (2) resulted in a decision that "was

22   based on an unreasonable determination of  the facts in light of the evidence presented in the State

23   court proceeding."  28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003);

24   Williams, 529 U.S. at 412-413.

25       A state court decision is "contrary to" clearly established federal law "if it applies a rule

26   that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set

27   of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a

28   different result."  Brown v. Payton, 544 U.S. 133, 141 (2005), citing Williams, 529 U.S. at 405-

                                                5

1   406 (2000).

2         In Harrington v. Richter, 562 U.S. ___ , 131 S.Ct. 770 (2011), the U.S. Supreme Court

3   explained that an "unreasonable application" of federal law is an objective test that turns on

4   "whether it is possible that fairminded jurists could disagree" that the state court decision meets

5   the standards set forth in the AEDPA. The Supreme Court has "said time and again that 'an

6   *unreasonable* application of federal law is different from an *incorrect* application of federal

7   law.'" Cullen v. Pinholster, 131 S.Ct. 1388, 1410-1411 (2011).  Thus, a state prisoner seeking a

8   writ of habeas corpus from a federal court "must show that the state court's ruling on the claim

9   being presented in federal court was so lacking in justification that there was an error well

10  understood and comprehended in existing law beyond any possibility of fairminded

11  disagreement."  Harrington, 131 S.Ct. at 787-788.

12        The second prong pertains to state court decisions based on factual findings.  Davis v.

13  Woodford, 384 F.3d at 637, citing Miller-El v. Cockrell, 537 U.S. 322 (2003).  Under §

14  2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the

15  petitioner's claims "resulted in a decision that was based on an unreasonable determination of the

16  facts in light of the evidence presented in the State court proceeding."  Wiggins v. Smith, 539

17  U.S. at 520; Jeffries v. Wood, 114 F.3d at 1500.  A state court's factual finding is unreasonable

18  when it is "so clearly incorrect that it would not be debatable among reasonable jurists."  Id.; see

19  Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), cert.denied, Maddox v. Taylor, 543

20  U.S. 1038 (2004).

21        To determine whether habeas relief is available under § 2254(d), the federal court looks to

22  the last reasoned state court decision as the basis of the state court's decision.  See Ylst v.

23  Nunnemaker, 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir.

24  2004).  "[A]lthough we independently review the record, we still defer to the state court's

25  ultimate decisions."  Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

26        The prejudicial impact of any constitutional error is assessed by asking whether the error

27  had "a substantial and injurious effect or influence in determining the jury's verdict."  Brecht v.

28  Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120

(2007)(holding that the <u>Brecht</u> standard applies whether or not the state court recognized the error and reviewed it for harmlessness).

C.    Review of Claims

Petitioner claims: 1) He was unlawfully sentenced multiple times for one instance of inflicting great bodily injury in violation of California law and his federal due process rights; 2) The trial court erred by imposing a separate punishment for his conviction of assault with means likely to cause great bodily injury in violation of state law and his federal due process rights; 3) The trial court improperly doubled his sentence due to improper admission of a prior juvenile adjudication; 4) Defense counsel rendered ineffective assistance by advising Petitioner to admit a strike he should not have admitted; and 5) The trial judge was biased because she was the same judge who sentenced Petitioner in a prior juvenile case.

1.    Multiple Punishments

a.    State Court Opinion

Petitioner alleges the trial court wrongfully imposed separate sentences for great bodily injury enhancements that concerned only a single incident.  The claim was presented on direct appeal to the Fifth DCA, where it was rejected in a reasoned decision.

The appellate court rejected the claim as follows:

*The Great Bodily Injury Findings & Sentencing Proceedings*

The jury found the section 12022.7, subdivision (e) allegations to be true as to counts 1 and 3.

After hearing from Phillips, as well as Phillips's mother and son, the court entertained argument concerning the sentence to be imposed:

"[Prosecutor]: ... With relation to counts 1 and 3, Your Honor, there is a possible argument for 654 application of this particular case, and I do not believe that it should apply, specifically, due to the fact that while this could be argued as a continuous course of conduct, it would be the People's position that these are two discreet [sic] events. While they may have happened close in time, and on the same night, I think the fact that great bodily injury was inflicted at two separate occasions means that this court has the ability to run these charges consecutively and not as 654 charges. Specifically, the incident that took place in the bedroom, and injuries resulting in her broken ankle, the point that she then left the bedroom and was trying to leave the scene, the defendant had the ability to stop this particular incident at that point. Instead, he made the choice to continue on

with the assault and attack against her, specifically resulting in the loss of consciousness she experienced once she was in the vehicle at this particular point. Because of those particular findings by the jury of two separate counts of great bodily injury in this case, it would be the People's argument that the court should not treat these incidents as 654.[¶] ... [¶]

"The Court: Thank you. [Defense counsel]?

"[Defense Counsel]: I would just say I think these are all 654, it's out of the same course of conduct, but going back to what the court was saying, I think the court was correct in looking through [defendant]'s record that he does have a history of having issues with women, but there are mitigating factors...."

After hearing from defendant, the court ruled, in relevant part, as follows:

"[The Court:] With respect to whether or not 654 applies to counts 1 and 3, or whether concurrent or consecutive sentencing would be appropriate as to count 3, the facts in this case reflect that there was an attack on the victim in the house, and that's when [defendant] broke her ankle or her leg. The victim in this case was able to reach a temporary point of safety, and with the defendant's family members trying to hold him back. [Defendant] at that point clearly had an opportunity to reflect on his behavior and to stop at that point. Instead, [he] chased the victim out of the house into the car and strangled her to the point of unconsciousness while in the car. It is very clear that these are two separate and distinct acts of violence against the victim in this case. The defendant clearly had an opportunity to reflect and to stop the attack on the victim. Instead, he chose to pursue her and to continue the attack. Therefore, consecutive sentencing is clearly appropriate, in that this involved two separate acts of violence separated by time and place, in which the defendant clearly had an opportunity to reflect on his behavior, so this was not a continuous course of conduct, in that it was broken when the victim was able to get out of the house, and then the defendant continued to pursue her and then choked her to unconsciousness while in the car."

*Analysis*

Section 12022.7 provides, in pertinent part:

"(e) Any person who personally inflicts great bodily injury under circumstances involving domestic violence in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three, four, or five years. As used in this subdivision 'domestic violence' has the meaning provided in subdivision (b) of Section 13700.

"(f) As used in this section, 'great bodily injury' means a significant or substantial physical injury.

"(g) This section shall not apply to murder or manslaughter or a violation of Section 451 or 452. Subdivisions (a), (b), (c), and (d) shall not apply if infliction of great bodily injury is an element of the offense."

Section 654, subdivision (a) states, in part:

"An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."

This provision prohibits multiple punishments for: (1) a single act, (2) a single omission, or (3) a single indivisible course of conduct. (*People v. Deloza* (1998) 18 Cal.4th 585, 591.)

Assuming section 12022.7 allows for the imposition of a single enhancement per "assaultive episode" as defendant contends, the trial court did not err. Defendant assaulted Phillips on more than one occasion and in more than one location: once inside defendant's brother's apartment, and again in her vehicle parked outside. Hence, there were two "assaultive episodes," to borrow defendant's words. With regard to the fact not much time had passed between the two episodes, as the trial court pointed out, the acts were separated by sufficient time within which defendant had an opportunity to reflect upon his behavior. (*See People v. Petronella* (2013) 218 Cal.App.4th 945, 964.) Instead of doing so, or perhaps in spite of doing so, defendant elected to perpetrate a second assault on Phillips inside her car. We also note subdivision (h) of section 12022.7 provides that the "court shall impose the additional terms of imprisonment under either subdivision (a), (b), (c), or (d), but may not impose more than one of those terms for the same offense." (Italics added.) From the plain language of the statute then, there is no limit upon the imposition of an enhancement under this section to a situation such as the one before us where multiple offenses are involved. Subdivision (e)—the specific enhancement with which we are concerned—is missing from the aforementioned list. (*See People v. Coronado* (1995) 12 Cal.4th 145, 151.)

Both parties cite *People v. Ahmed* (2011) 53 Cal.4th 156 (*Ahmed*) in their discussion of this issue. "In *Ahmed*, the court addressed whether and how section 654 applies to the imposition of multiple enhancements for a single crime." (*People v. Calderon* (2013) 214 Cal.App.4th 656, 662.) Here, as the People recognize, we are dealing with multiple enhancements for multiple, separate crimes (i.e., corporal injury to a spouse and assault by means likely to produce great bodily injury). The analysis is different when considering two enhancements attached to different underlying crimes.

"[S]eparate enhancements—even under the same statute—may be imposed for each conviction arising out of a separate criminal act. [Citations.]" (*People v. Wooten* (2013) 214 Cal.App.4th 121, 130–131 (*Wooten*).) "So long as the conduct giving rise to the convictions of separate substantive offenses ... arises from separate ... acts, neither section 654 nor *Ahmed, supra*, 53 Cal.4th 156 requires the staying of the [punishment on the] attached enhancements." (*Wooten, supra*, at p. 131.) "When the criminal acts forming the basis for convictions of multiple substantive offenses are divisible—i.e., reflecting separate intents, objectives, or events—then section 654 has been held inapplicable." (*Wooten*, at p. 130.)

That court distinguished the authorities relied upon by defendant Wooten, including two cases relied upon by defendant here:

"*Reeves, Moringlane, Culton*, and *Alvarez* stand for the proposition that only one enhancement for great bodily injury may be imposed on a defendant if he or she committed a single assault against a single victim. Here, defendant challenges the imposition of two enhancements for great

bodily injury arising out of his crimes against M.S. Consequently, the propriety of the separate enhancements imposed on defendant depends on whether the attacks against M.S. constitute a single, indivisible assault or separate criminal acts." (*Wooten, supra*, 214 Cal.App.4th at p. 132.)

In *Wooten*, the court found two separate attacks on victim M.S. The attacks occurred over a period of about 15 minutes and began with an assault in the bathroom, followed by another attack in the bedroom after M.S. pushed her attacker away and sought escape. (*Wooten, supra*, 214 Cal.App.4th at pp. 125–126, 132–133.) Like the *Wooten* court, we are not persuaded by defendant's characterization of his attack of Phillips as a single assault or the result of a continuous course of conduct.

Here, despite defendant's argument to the contrary, the corporal injury to a spouse and assault by means likely to produce great bodily injury arose from separate criminal acts or events. The corporal injury to a spouse conviction arose from defendant's physical act of breaking Phillips's ankle or leg in the bedroom of his brother's apartment following a verbal dispute concerning a future visit between Phillips's son and his biological father. Whereas the assault by means likely to produce great bodily injury arose from defendant's subsequent physical act of strangling or choking Phillips inside her vehicle to the point she lost consciousness. Because these are separate acts or events, the *Wooten* test is satisfied. (*Wooten, supra*, 214 Cal.App.4th at pp. 130–131.) Section 654 does not require punishment on either enhancement be stayed. (*Ibid.*)

"[I]f section 654 does not bar punishment for two crimes, then it cannot bar punishment for the same enhancements attached to those separate substantive offenses. This is true even if the same type of sentence enhancement is applied to the underlying offenses." (*People v. Wooten, supra*, 214 Cal.App.4th at p. 130.) Although great bodily injury was inflicted upon one victim, as we have discussed, two separate injuries were inflicted as a result of two separate and distinct acts. On this record, we find no error in the imposition of the great bodily injury enhancements.

*Maxey*, 2014 WL 6477558, at *3–6 (footnotes omitted).

        b.    Analysis

Petitioner contends that the state courts misinterpreted and misapplied California sentencing laws. As correctly argued by Respondent, such a claim is not cognizable by way of § 2254. The claim concerns the application of state law, and generally, issues of state law are not cognizable on federal habeas review. See Estelle v. McGuire, 502 U.S. 62, 67 (1991) (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'"); Gilmore v. Taylor, 508 U.S. 333, 348-349 (1993) (O'Connor, J., concurring) ("mere error of state law, one that does not rise to the level of a constitutional violation, may not be corrected on federal habeas"); Clemons v. Mississippi, 494 U.S. 738, 739–740 (1990) (federal court has no basis for disputing a state's interpretation of its

own law.)

Issues of state law sentencing errors are not cognizable on federal habeas review unless the petitioner claims a deprivation of due process or equal protection due to the misapplication of the sentencing law.  See Fetterly v. Paskett, 997 F.2d 1295, 1300 (9th Cir. 1993); Featherstone v. Estelle, 948 F.2d 1497, 1500 (9th Cir. 1991).  Federal courts must defer to a state court's interpretation of state sentencing laws.  Bueno v. Hallahan, 998 F. 2d 86, 88 (9th Cir. 1993). "Absent a showing of fundamental unfairness," a state court's misapplication of its own sentencing laws does not justify federal habeas relief. Christian v. Rhode, 41 F. 3d 461, 469 (9th Cir. 1994).

Petitioner contends there was one continuous episode of assaultive behavior.  Therefore, he argues, he should have received only one punishment under Cal. Penal Code § 654.  The state courts, however, interpreting their own state laws, concluded that there were two separate and distinct assaults.  There was the first attack on the victim in the house when Petitioner broke her ankle or her leg.  The victim was then able to reach a temporary point of safety with Petitioner's family members intervening and trying to hold him back.  At that point, Petitioner clearly had an opportunity to reflect on his behavior and stop.  Instead, he pursued the victim out of the house and into the car where he attacked her again and strangled her to the point of unconsciousness. The two incidents were clearly separate in time and place, and the state courts reasonably determined that Petitioner had an opportunity to reflect on his behavior prior to commencing the second attack.  As such, as the jury found, there were two separate and distinct crimes.  This Court is in no position to second-guess the California state courts in interpreting their own statutes, and there is no reason to consider the interpretation "fundamentally unfair" under the federal constitution.  Accordingly, the Court concludes that no due process violation occurred and the claim should be rejected.

2.    Stay of Sentence on Second Count

a.    State Court Opinion

Petitioner also alleges the trial court should have stayed the assault count under due process and Cal. Penal Code § 654.  This claim was also raised on direct appeal to the Fifth DCA.

The Fifth DCA denied the claim as follows:

> Defendant argues *People v. Correa* (2012) 54 Cal.4th 331 and *People v. Jones* (2012) 54 Cal.4th 350 support his position. In *Jones*, police searched the car the defendant was driving and found a loaded .38–caliber revolver that was not registered to him. The defendant told the officers that he bought the gun three days earlier for protection. He was convicted of possessing a firearm by a felon, carrying a readily accessible concealed and unregistered firearm, and carrying an unregistered firearm in public. He was separately sentenced for each offense. (*Jones, supra*, at p. 352.) *Jones* held that "a single possession or carrying of a single firearm on a single occasion may be punished only once under section 654." (*Id.* at p. 357.) It further concluded that "[s]ection 654 prohibits multiple punishment for a single physical act that violates different provisions of law." (*Id.* at p. 358.) The holding in *Jones* does not require the sentence imposed for count 3 be stayed because, as we explained above, more than a single physical act occurred. The holding in *Correa* does not help defendant here: "[T]he purpose of section 654 is to ensure that a defendant's punishment will be commensurate with his culpability. [Citations.] ... '... A person who commits separate, factually distinct, crimes, even with only one ultimate intent and objective, is more culpable than the person who commits only one crime in pursuit of the same intent and objective.' [Citation.]" (*People v. Correa, supra*, 54 Cal.4th at p. 341.) Here, because defendant committed more than one separate and factually distinct crime against Phillips, he is more culpable than an individual who committed a single crime, with the same intent and objective. As a result, the trial court did not err by refusing to stay imposition of the sentence in count 3, and no due process violation occurred.

*Maxey*, 2014 WL 6477558, at *6.

        **b.**    <u>Analysis</u>

The claim should be rejected for the same reasons stated in Ground One, *supra*. The Court is bound by the state court interpretation of state law. In addition, the state court reasonably determined that there were two separate and distinct crimes committed, and Petitioner fails to demonstrate that the state court's conclusion was fundamentally unfair.

      *3.*    <u>Prior Juvenile Conviction</u>

In his third claim, Petitioner alleges the trial court wrongly doubled his sentence because of the improper admission of a juvenile adjudication. In his fourth claim, he contends his attorney was ineffective for advising Petitioner to admit the prior. Both claims were not previously presented to the state courts, and therefore they must be dismissed for failure to exhaust state remedies. <u>Rose v. Lundy</u>, 455 U.S. 509, 521-22 (1982); <u>Raspberry v. Garcia</u>, 448 F.3d 1150, 1154 (9th Cir. 2006).

In addition, the claims are frivolous. While the prior juvenile adjudication is not a

12

1   conviction for purposes of Cal. Penal Code § 667(a)(1), it is a conviction under § 667(d)(3).

2   There is no merit to Petitioner's contention otherwise.  In addition, Petitioner did not "admit" his

3   prior conviction; he specifically demanded a trial on the priors and received one.  (RT[2] 1258-

4   1276.)  Thus, his claim that defense counsel wrongly advised him to admit his prior conviction is

5   frivolous.

6          *4.*     Judicial Bias

7          Last, Petitioner alleges the trial judge was biased against him because she had previously

8   presided over a juvenile matter involving Petitioner.  This claim has also not been presented to the

9   state courts and therefore should be dismissed as unexhausted.  In addition, the claim is

10   conclusory.

11          "The Due Process Clause entitles a person to an impartial and disinterested tribunal."

12   Marshall v. Jerrico, Inc., 446 U.S. 238, 243 (1980).  As stated by the United States Supreme

13   Court:

14          A fair trial in a fair tribunal is a basic requirement of due process. Fairness of
       course requires an absence of actual bias in the trial of cases. But our system of
15          law has always endeavored to prevent even the probability of unfairness. To this
       end no man can be a judge in his own case and no man is permitted to try cases
16          where he has an interest in the outcome.

17   In re Murchison, 349 U.S. 133, 136 (1955).

18          To sustain a claim of judicial bias, "there must be an 'extremely high level of interference'

19   by the trial judge that creates 'a pervasive climate of partiality and unfairness.'"  Duckett v.

20   Godinez, 67 F.3d 734, 740 (9th Cir.1995) (quoting United States v. DeLuca, 692 F.2d 1277, 1282

21   (9th Cir.1982)).  However, in attempting to make out a claim of unconstitutional bias, a petitioner

22   must "overcome a presumption of honesty and integrity" on the part of decision-makers.

23   Withrow v. Larkin, 421 U.S. 35, 47 (1975).

24          Petitioner claims the judge was biased merely because she had previously sentenced

25   Petitioner in a prior juvenile adjudication.  Petitioner argues that because of this, the judge had

26   personal knowledge of facts concerning Petitioner from the previous matter.  Essentially, his

27   claim is that because the judge had previously sentenced Petitioner in a prior matter, she must

28   _____
    [2] "RT" refers to the Reporter's Transcript on Appeal.

13

have been biased in the subsequent matter.  The claim is completely conclusory and unsupported by any facts.  There is no Supreme Court precedent barring a judge from presiding in a subsequent matter simply because it involves the same party.  In addition, Petitioner fails to point to anything resembling bias or prejudice on the part of the trial judge.  The claim should be denied as unexhausted and without merit.

**IV.     RECOMMENDATION**

Accordingly, the Court **RECOMMENDS** that the Petition for Writ of Habeas Corpus be **DENIED** with prejudice on the merits.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within twenty-one days after being served with a copy of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the Objections shall be served and filed within ten court days (plus three days if served by mail) after service of the Objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **December 1, 2016**                    **/s/ Jennifer L. Thurston**
                                        UNITED STATES MAGISTRATE JUDGE

14